# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT RINGDAHL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:18-cv-01006-PX |
| ARTIN AFSHARJAVAN, | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Pending in this breach of contract action is Plaintiff Robert Ringdahl's motion for summary judgment (ECF No. 47). The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court grants Ringdahl's motion as to liability, but denies the motion as to damages. Ringdahl will be granted 14 days from the date of this Opinion and accompanying Order to supplement the record as to damages and to submit a petition for reasonable attorneys' fees.

### I.     Background

The following facts are undisputed. In June 2017, Ringdahl loaned $150,000 to Binary Group, Inc. ("Binary Group"), a government contractor. ECF No. 50 ¶ 13; ECF No. 2 at 7; ECF No. 12 at 7; ECF No. 47-3 ¶ 3. Defendant Artin Afsharjavan, a shareholder of Binary Group and a member of its board of directors, personally guaranteed the loan as memorialized in a written Guaranty Agreement. ECF No. 47-13; ECF No. 50 ¶ 5; ECF No. 47-10 at 4–7. Additionally, Binary Group's CEO, Kawaljit Singh, memorialized an identical Guaranty Agreement in connection with the Ringdahl loan. ECF No. 47-10 at 13–16. Both Guaranty Agreements provided that if Binary Group defaulted on repayment terms of the Ringdahl loan, Ringdahl could seek satisfaction of the loan from Afsharjavan and Singh regardless of whether Ringdahl

pursued separate legal action against Binary Group. ECF No. 47-10 at 4–7, 13–16.

In addition to the Guaranty Agreements, Afsharjavan and Singh executed two separate Stock Pledges, identical except for the number of shares pledged. Afsharjavan secured the loan by pledging 450,000 shares of Binary Group stock to Ringdahl, whereas Singh pledged 40,500 shares. ECF No. 47-10 at 8–12, 17–22. Both Stock Pledges provided that the stock would be released once the loan was paid in full. *Id.*

During this time, Binary Group experienced financial difficulties and failed to pay on the Ringdahl loan. On November 20, 2017, Binary Group and Ringdahl modified the terms of the loan by way of an allonge to the promissory note, which extended payments on the loan through February 1, 2018 but did not otherwise change the terms of the Guaranty Agreements or Stock Pledges. ECF No. 47-15. Binary Group, however, did not satisfy the amended loan agreement, and on January 2, 2018, Ringdahl issued a notice of loan default on the company. ECF No. 47-18. The outstanding loan balance owed to Ringdahl at that time was $128,750. ECF No. 47-18; ECF No. 47-3 ¶¶ 23–25.

On January 11, 2018, the Binary Group Board scheduled an emergency Board meeting to take place on January 22, 2018. ECF No. 50-13. The purpose of the meeting was to address the financial health of the company and whether Singh should be ousted from the Board for having taken money from the company. *See* ECF Nos. 50-13; 47-17. On the same day, Singh and Ringdahl entered a separate agreement which released Singh from his personal guaranty on the loan in exchange for transferring his 450,000 shares of Binary Group stock to Ringdahl. ECF No. 50-12. Singh also agreed to allow Ringdahl a proxy vote for the 450,000 shares at upcoming Board meetings until the shares were transferred. *Id.*

The Board meeting occurred as planned. On January 22, 2018, Singh was unanimously

voted off the Board and Ringdahl was voted in as a Director, albeit over Afsharjavan's objection. ECF No. 50-13. The record is unclear as to whether Singh ever transferred the 450,000 shares to Ringdahl, and if so, the fair market value of such shares at the time of transfer.[1] Further, although Ringdahl acknowledged in his deposition to having "settled" the matter with Singh, the record sheds no additional light on the terms of this settlement and whether the settlement satisfied some or all of the outstanding balance of the Ringdahl loan. ECF No. 50-5 at 3.

Initially, Ringdahl filed suit in the Circuit Court for Montgomery County, Maryland alleging that Afsharjavan breached his obligations under the Guaranty Agreement and the Stock Pledge by failing to pay the outstanding loan amounts. ECF No. 2. Afsharjavan, proceeding pro se, removed the action to this Court. ECF No. 1. After a lengthy discovery period, Ringdahl moved for summary judgment on both counts. ECF No. 47.

## II. Standard of Review

Summary judgment is appropriate when the court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

---

[1] The record also reflects that Singh notified Ringdahl, through counsel, that Singh believed the January 11, 2018 agreement was void as procured under duress, ECF No. 50-14. However, Ringdahl testified that the "settlement" with Singh had been "affirmed" in the summer of 2018. ECF No. 50-5 at 3.

3

Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex*, 477 U.S. at 322. Although a pro se party is "given some latitude," he may not avoid summary judgment by "relying on bald assertions and speculative arguments." *Mansfield v. Kerry*, No. DKC 15-3693, 2016 WL 7383873, at *2 (D. Md. Dec. 21, 2016) (citing *Smith v. Vilsack*, 832 F. Supp. 2d 573, 580 (D. Md. 2011)).

### III. Discussion

As a preliminary matter, the Court must determine which state law applies to the claims. Federal courts sitting in diversity apply the conflict of laws rules of the forum state. *See Sokolowski v. Flanzer*, 769 F.2d 975, 977 (4th Cir. 1985). Under Maryland law, if the contract does not include a choice-of-law provision, the court applies "the law of the jurisdiction where the contract was made." *Cunningham v. Feinberg*, 441 Md. 310, 326 (2015). The Guaranty Agreement plainly states that Maryland law applies. ECF No. 47-10 at 7. Although the Stock Pledge does not include an express choice-of-law provision, the record reflects that it was executed contemporaneously with the promissory note between Ringdahl and Binary Group, which clearly demonstrates that the Stock Pledge was made in Maryland. ECF No. 2 ¶ 19; ECF No. 47-10 at 2–3 (stating that the note "is secured . . . by a stock pledge agreement dated the date

4

hereof" and that the note "is made in . . . the State of Maryland"). Moreover, neither party disputes that Maryland law applies to both agreements. The Court, therefore, applies Maryland law to the claims.

In Maryland, "to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *RRC Ne., LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658 (2010). For each of the contracts in dispute, Afsharjavan has failed to generate a genuine issue of disputed fact as to his having breached his contractual obligations. Each contract claim is considered separately.

### A. Breach of the Guaranty Agreement

It is undisputed that under the Guaranty Agreement, Afsharjavan promised to guaranty repayment of the Ringdahl loan. ECF No. 47-10 at 4–7; ECF No. 47-13. It is also undisputed that that Binary Group defaulted on the loan, ECF No. 47-18; ECF No. 47-3 ¶¶ 10–25, triggering Afsharjavan's obligation to satisfy the loan balance. Finally, it is undisputed that Afsharjavan failed to pay Ringdahl. The unrebutted evidence, when viewed most favorably to Afsharjavan, thus supports that Afsharjavan breached the Guaranty Agreement.

Afsharjavan contends, however, that summary judgment must be denied because his repayment obligations were "secondary" as a surety. ECF No. 12 at 5.[2] But this argument is expressly contradicted by the plain and unambiguous terms of the agreement which states that the "obligations and liabilities of the Guarantor . . . shall be primary, direct, and immediate." ECF No. 47-10 at 5. Even more fatal to the argument, no record evidence supports Afsharjavan's contention.

---

[2] Because Afsharjavan proceeds pro se, the Court considers his affirmative defenses as pleaded in his Answer even if he did not address those defenses in his opposition to summary judgment.

Afsharjavan next argues that summary judgment must be denied because Binary Group maintains the financial wherewithal to satisfy the loan obligations. Accordingly, says Afsharjavan, Binary Group's solvency renders him somehow not legally obligated to pay the outstanding amount. ECF No. 50 at 9. Again, this argument is unsupported in the record. The record is clear that Binary Group did not honor its obligations under the loan. It is also clear that under the Guaranty Agreement, Binary Group's default allows Ringdahl to exercise his rights under the Agreement without first making demands on Binary Group for satisfaction. ECF No. 47-10 ¶ 6. In this respect, Binary Group's ability to pay is beside the point. The company's default triggered Ringdahl's right to collect against Afsharjavan.

Last, Afsharjavan argues that the Guaranty Agreement is "void as unconscionable and contrary to public policy." ECF No. 12 at 5. Once again, Afsharjavan has generated no evidence in support of this contention. An unconscionable contract is "characterized by extreme unfairness, which is made evident by (1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party." *Walther v. Sovereign Bank*, 386 Md. 412, 426 (2005) (citations and internal quotation marks omitted). Nothing in the record, construed most favorably to Afsharjavan, demonstrates that he lacked meaningful choice to enter into the agreement. *See Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir.2013) (finding that to survive summary judgment, the nonmoving party "cannot solely rely on mere allegations" but "must set forth specific facts that go beyond the mere existence of a scintilla of evidence") (internal quotation marks omitted). The Guaranty Agreement's terms are plain and Afsharjavan is presumed to have read and understood that which he signed. *See Walther*, 386 Md. at 429 ("the law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms.") (citation omitted). Nor has Afsharjavan

generated any evidence that the loan terms were so one-sided to the point of unconscionability. *See id.* at 431 (noting that courts "will not simply excise or ignore terms merely because, in the given case, they may operate to the perceived detriment of the weaker party,"). Accordingly, because the Guaranty Agreement plainly obligated Afsharjavan to pay Ringdahl if Binary Group defaulted on its loan, and Afsharjavan refused to pay, summary judgment must be granted in favor of Ringdahl on the breach of the Guaranty Agreement claim.

### B. Breach of the Stock Pledge

Afsharjavan also pledged 450,000 shares of Binary Group stock as further security for the loan. ECF No. 12 ¶ 13; ECF No. 47-10 at 8–12; ECF No. 47-13. The Stock Pledge provides that "after any default by [Binary Group] in the payment of the Loan, [Ringdahl], at [his] option . . . with or without bringing any action . . . may foreclose on the Stock." Further, Ringdahl's "exercise of any of [his] remedies . . . shall not cure or waive any default . . . under the . . . other agreements." ECF No. 47-10 at 9.

Afsharjavan offers no argument challenging the validity of the Stock Pledge. Rather, Afsharjavan argues that this obligation was extinguished when Singh agreed to tender 450,000 shares of Binary Group stock. ECF No. 50 ¶ 34. However, the January 11, 2018 agreement between Singh and Ringdahl unambiguously released only Singh of "all personal responsibility for the loan to Binary Group." ECF No. 50-12. This agreement cannot be read to extinguish Afsharjavan's obligations. In fact, both Singh and Afsharjavan's Guaranty Agreements expressly provide that releasing one guarantor "shall in no way release or discharge" any other guarantor "from liability hereunder, in whole or in part." ECF No. 47-10 at 4, 13. Accordingly, although Singh's settlement with Ringdahl may offset the total amount that Afsharjavan owes,[3]

---

[3] A creditor cannot collect a total of more than 100% of its claim in the aggregate from all contributing parties. *See, e.g., Nuveen Mun. Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283, 295 (3d Cir. 2012) ("a creditor cannot collect

7

Ringdahl's settlement with Singh does not extinguish Afsharjavan's obligations to Ringdahl.

   C. Damages

Ringdahl seeks from Afsharjavan the outstanding loan balance plus attorneys' fees. Under Maryland law, the non-breaching party is entitled to compensatory damages that are a natural and proximate consequence of the breach, or which are reasonably within the parties' contemplation at the time of the contract. *Munday v. Waste Mgmt. of N. Am., Inc.*, 997 F. Supp. 681, 685 (D. Md. 1998) (citing *Stone v. Chicago Title Ins. Co.,* 330 Md. 329, 342 (1993)). "The measure of such damages is the sum which would place the injured party in the same position as if the contract had been performed." *Id.* (citing *Beard v. S/E Joint Venture,* 321 Md. 126 (1990)).

Although Ringdahl appropriately seeks as damages the balance of the outstanding loan amount, the record evidence viewed most favorably to Afsharjavan renders the exact figure difficult to ascertain. The record reflects that Ringdahl "settled" his claims with Singh in connection with the same loan although the exact terms of the settlement are not clear. ECF Nos. 50-12; 50-5 at 3. Further, the record reflects that Ringdahl may have received 450,000 of Singh's shares of Binary Group stock to release Singh from his obligations, although, again, the record is not clear as to whether Ringdahl in fact received the shares, and if so, their fair market value. *Id.* Ringdahl recognizes the he may recover no more than the outstanding loan balance. *Compare* ECF 47-2 at 15 *with Gen. Tel. Co. of the Nw., Inc. v. Equal Employment Opportunity Comm'n,* 446 U.S. 318, 333 (1980) ("It also goes without saying that the courts can and should preclude double recovery by an individual.") *and Nuveen Mun. Trust*, 692 F.3d at 295 ("a

---

more, in total, than the amount it is owed.") (citing *Ivanhoe Building & Loan Ass'n of Newark, N.J. v. Orr*, 295 U.S. 243, 246 (1935)).

creditor cannot collect more, in total, than the amount it is owed.") (citing *Ivanhoe,* 295 U.S. at 246). Accordingly, the Court must ascertain the sums that Ringdahl has already received in connection with the loan to Binary Group. The record in this respect compels denial of summary judgment as to damages.

Ringdahl also requests that this Court order Afsharjavan to tender the Binary Group stock by enforcing the terms of the Stock Pledge. A party seeking specific performance must "be able to show that he has fully, not partially, performed everything required to be done on his part." *Cattail Assocs., Inc. v. Sass*, 170 Md. App. 474, 499 (2006) (quoting *Clayten v. Proutt,* 227 Md. 198, 203 (1961)). Whether specific performance is warranted rests with the sound discretion of the court. *Hupp v. Geo. R. Rembold Bldg. Co.,* 279 Md. 597, 600 (1977). Specific performance is typically granted "when money damages are inadequate, such as when the plaintiff cannot secure a comparable substitute performance by means of money awarded as damages." *8621 Ltd. P'ship v. LDG, Inc.*, 169 Md. App. 214, 239 (2006). However, "[i]f a contract is fair, reasonable and certain, specific performance may be granted almost as a matter of course." *Steele v. Goettee*, 313 Md. 11, 23 (1988) (citing of *Hupp*, 279 Md. at 601 (1977)).

The Stock Pledge plainly provides that if Binary Group defaulted on the loan, which it did, the 450,000 shares that Afsharjavan pledged would be forfeited to Ringdahl. ECF No. 47-10 at 8–10. However, because the amounts owed to Ringdahl remain uncertain, the Court cannot yet conclude that specific performance is warranted.

The Court recognizes that although it cannot grant summary judgment as to damages at this juncture, it also may be premature to set in a damages-only trial. Although Afsharjavan has not formally sought contribution from Singh, or asserted the affirmative defense of offset, he is proceeding pro se. Construing Afsharjavan's arguments broadly, as it must, the Court finds that

he has squarely contended Singh's settlement affects the amounts owed to Ringdahl.

Consequently, the Court directs that within 14 days from the date of this Opinion and Order, Ringdahl must supplement the record with evidence regarding any amounts he received in connection with the Singh settlement as to the Binary Group loan. Ringdahl also must supplement the record as to whether he received Binary Group stock from Singh to release Singh's obligations under the Guaranty Agreement and Stock Pledge, and if so, the value of the stock at the time of receipt. Finally, Ringdahl shall submit evidence of the current fair market value of Afsharjavan's stock that was pledged. Afsharjavan shall be granted fourteen days to respond. Both parties may submit letter pleadings not to exceed five pages on the question of damages related to the supplemental record evidence. A reply is not permitted unless requested by the Court. The Court will then determine whether trial is necessary as to the outstanding amounts owed to Ringdahl in connection with Afsharjavan's breach of the Guaranty Agreement and Stock Pledge.

### D.     Attorneys' Fees

As to attorneys' fees, both the Guaranty Agreement and the Stock Pledge plainly provide for attorneys' fees to Ringdahl. The Guaranty Agreement expressly states that the guarantor (Afsharjavan) agrees to pay "all attorneys' fees incurred by [Ringdahl] for the filing of any action to enforce this Guaranty and in the event of such an action . . . all attorney's fees incurred by the [Ringdahl] in connection with such action." ECF No. 47-10 at 5. The Stock Pledge similarly compels the non-prevailing party to pay the prevailing party's "reasonable attorneys' fees and costs." ECF No. 47-10 at 10. Accordingly, within fourteen days from the date of this Opinion and accompanying Order, Ringdahl shall submit a petition for reasonable attorneys' fees. Ringdahl is advised to consult this Court's Local Rule 109 and Appendix B for guidance.

Afsharjavan shall be granted fourteen days to respond to the fee petition. Both parties are directed to submit their pleadings in letter format not to exceed five pages exclusive of exhibits. A reply is not permitted unless requested by the Court.

## IV. Conclusion

For the foregoing reasons, Plaintiff Robert Ringdahl's motion for summary judgment is GRANTED as to liability and DENIED as to damages. A separate order follows.

    10/22/2019                                                             /S/
Date                                                                                 Paula Xinis
                                                                                   United States District Judge