IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT RINGDAHL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:18-cv-01006-PX |
| ARTIN AFSHARJAVAN, | * | |
| Defendant. | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending in this breach of contract action is a motion for attorneys' fees, ECF No. 57, and a motion for substitution of parties filed by Qun Wang, Executrix of the Estate of Robert Allen Ringdahl. ECF No. 60. Also before the Court is supplemental briefing on the propriety of granting summary judgment as to damages. ECF Nos. 54–56. The motions are unopposed, and the arguments set forth in the supplemental briefing are uncontested. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons, damages are awarded to Plaintiff in the amount of $128,750 plus prejudgment interest; attorneys' fees are awarded in the amount of $56,832.50; costs and expenses are awarded in the amount of $1,721.10; and the motion to substitute party is granted.

**I.     Summary Judgment – Damages**

The Court incorporates its findings and conclusions as to liability from its prior opinion, ECF No. 54. The relevant record evidence demonstrates that Ringdahl had loaned $150,000 to Binary Group, Inc. ("Binary Group"), of which Afsharjavan was a shareholder and member of its board of directors. Both Afsharjavan and Binary Group's CEO, Kawaljit Singh, personally guaranteed the loan as memorialized in separate, written Guaranty Agreements, which provided that if Binary Group defaulted on the repayment terms of the loan, Ringdahl could seek

repayment from Afsharjavan or Singh. *Id.* Afsharjavan and Singh also executed two separate Stock Pledges, identical except for the number of shares pledged. Afsharjavan secured the loan by pledging 450,000 shares of Binary Group stock to Ringdahl, whereas Singh pledged 40,500 shares. *Id.* Both stock pledges provided that the stock would be released once the loan was paid in full. *Id.*

Binary Group ultimately failed to pay on the Ringdahl loan. *Id.* at 2. On January 2, 2018, Ringdahl issued a notice of loan default on the company and turned to collect from Afsharjavan and Singh. *Id.* The outstanding loan balance owed to Ringdahl at that time was $128,750. *Id.*

Although Singh settled his outstanding obligations with Ringdahl, Afsharjavan did not. Nor did he transfer the 450,000 shares as required by the Stock Pledge. *Id.* at 5, 7. Accordingly, Ringdahl initiated suit against Afsharjavan, as personal guarantor, for breach of the Guaranty Agreement and the Stock Pledge. *Id.* at 7. After extensive litigation, the Court awarded summary judgment in Ringdahl's favor on liability. ECF Nos. 54, 55.

Calculation of damages on summary judgment, however, was less straightforward. First, the Court questioned whether Ringdahl's recovery must be offset by the amount Ringdahl had already received from the Singh settlement. *Id.* at 8–9. Relatedly, the record evidence did not reflect the exact terms of the Singh settlement or whether Ringdahl had actually received any payment from Singh. *Id.* Thus, the Court ordered Ringdahl to supplement the record as to: (1) any amounts he received in connection with the Singh settlement as to the Binary Group loan; (2) whether the transfer of stock occurred; (3) the value of the stock at the time of receipt; and (4) the current fair market value of Afsharjavan's stock that was pledged. ECF No. 54 at 10. Ringdahl's supplement clarifies that the Singh Settlement involved solely an exchange of stock

2

that occurred on January 11, 2018. ECF No. 56. at 2, 7. As to the value of the stock, Ringdahl contends the shares were worthless. Ringdahl recounts that Binary Group was "not profitable and deeply in debt" at the time. *Id.* at 2. In support of this position, Ringdahl emphasizes that an independent valuation of the Binary Group stock substantiates that the stock was worthless. *Id.* at 6 ("[I]t is our opinion that . . . [a]s of the date of December 31, 2017, the Fair Market Value of the shares held by Mr. Kawaljit Singh was $0.00 per share. The company was insolvent at the time and subsequently posted negative income for all of 2018, further confirming a value of zero for any equity."). Afsharjavan has generated no evidence to contradict this valuation. Thus, viewing the record most favorably to Afsharjavan, no rational trier of fact could accord the stock any worth.

Ringdahl also urges that the Court consider the value of Afsharjavan's stock pledged at the time of the breach to be the same—worthless. ECF No. 56 at 3. Afsharjavan has failed to respond. The Court, therefore, has no basis to offset the outstanding loan amount that Afsharjavan owes to Ringdahl arising from the breach of the Guaranty Agreement. Thus, the Court concludes that summary judgment as to damages is proper in the amount of $128,750 plus prejudgment interest.

## II.   Attorneys' Fees

The Court has previously found that under the terms of the Guaranty Agreement attorneys' fees provision, Afsharjavan must pay Ringdahl's reasonable attorneys' fees and costs. *See* ECF No. 54 at 10. Ringdahl specifically seeks $61,061.00 in attorneys' fees and $1,721.10 for costs and expenses, totaling $62,782.10.[1] ECF No. 57-4 at 3. Ashfarjavan has not responded to this petition, and the period for doing so has passed. *See* Loc. R. 109.1, 109.2. For the

---

[1] Ringdahl's request in the pleadings is $270 less than the total of the itemized bill submitted as ECF. No. 57-2. The Court could not account for this difference.

following reasons, the Court awards Ringdahl $56,832.50 for attorneys' fees and $1,721.10 for costs and expenses for a total sum of $58,553.60.

Sitting in diversity, this Court applies the law of the forum state to a request for attorneys' fees. *LNV Corp. v. Harrison Family Bus.*, LLC, No. ELH-14-03778, 2015 WL 7454044, at *7 (D. Md. Nov. 23, 2015) (citing *Ranger Constr. Co. v. Prince William Cnty. Sch. Bd.*, 605 F.2d 1298, 1301 (4th Cir. 1979)); *see also Rohn Prods. Int'l, LC v. Sofitel Capital Corp. USA, Inc.*, No. WDQ-06-504, 2010 WL 3943747, at *4 n.13 (D. Md. Oct. 7, 2010) ("In a diversity case, absent a conflicting applicable federal rule of procedure, state law governs not only the actual award of attorneys' fees but also the method of determining those fees.") (citation omitted). The Court has previously determined, and neither party disputes, that Maryland law applies to this request. ECF No. 54 at 4–5.

Maryland law requires that this court "examine the prevailing party's fee request for reasonableness." *Myers v. Kayhoe*, 391 Md. 188, 207 (2006). Where the award of fees is authorized by contract, the Court is guided by Rule 1.5 of the Maryland Lawyers' Rules of Professional Conduct ("MRPC"). *Monmouth Meadows Homeowners Ass'n., Inc. v. Hamilton*, 416 Md. 325, 336–37 (2010). The factors enumerated in Rule 1.5 are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

> (7) the experience, reputation, and ability of the attorney or attorneys performing the services; and
>
> (8) whether the fee is fixed or contingent.

Md. R. Attorneys, R. 19-301.5(a). The Court need not make specific findings as to each factor, and may, in its discretion, consider any other factors "reasonably related to a fair award of attorneys' fees." *Monmouth Meadows*, 416 Md. at 337–38; *see also CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387, 465 (2012) (applying *Monmouth Meadows*).

Ringdahl's attorneys litigated the claim for twenty months, from filing of the Complaint through discovery and summary judgment. The case involved comprehensive briefing in response to Afsharjavan's motion to amend his Answer and asserted counterclaims, as well as litigation concerning Afsharjavan's motion to subpoena Ringdahl's personal federal and state tax returns. *See* ECF No. 36; ECF No. 38; ECF No. 44. When considering the relative complexities of the case, the Court concludes that the time expended to prosecute this matter is reasonable.

That said, the Court will deduct requested fees for two attorneys' attendance at the deposition of Ringdahl's wife, Wang. ECF No. 57 at 3. Appendix B to this Court's Local Rules provides that only "one lawyer for each separately represented party shall be compensated for attending depositions" unless there is a "showing of a valid reason for sending two attorneys to the deposition." Loc. R., App'x B.2.b. Both Stephen D. Charnoff, Esq. and Jasmine G. Chalashtori, Esq. attended Wang's the deposition and billed 1.7 hours and 2.8 hours, respectively. ECF. No. 57-2 at 11. Ringdahl fails to justify the need for both attorneys to defend this deposition. Accordingly, Chalashtori's time shall be reduced 1.7 hours.

As to the hourly rate employed for each attorney's work in this matter, Ringdahl bears the burden of establishing reasonableness. *Astornet Techs., Inc. v. BAE Sys.*, Inc., 201 F. Supp. 3d 721, 730 (D. Md. 2016) (citing *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). The ranges

5

stated in the Court's Local Rules are presumptively reasonable. *Manning v. Mercatanti*, No. ELH-11-2964, 2014 WL 1418322, at *5 (D. Md. Apr. 10, 2014) (citation omitted); *see also* Loc. R., App'x B.

Notably, each of the hourly rates for all five attorneys exceed the presumptively reasonable rate. *See* ECF No. 57 at 2; Loc. R., App'x B.3.[2] Ringdahl has submitted nothing to the Court to justify departure from the presumptively reasonable rates. *See Manning*, 2014 WL 1418322, at *5. Accordingly, the Court will adopt the upper limit of the hourly rates set forth in the Local Rules, and apply those rates to the actual work performed. *SunTrust Bank v. Goldman*, 201 Md. App. 390, 400 (2011); *Manning*, 2014 WL 1418322, at *2. The total attorneys' fees awarded is $56, 832.50.

As for costs, Ringdahl has submitted proof of costs in compliance with this Court's Local Rules. Loc. R. 109.1; ECF No. 57; ECF No. 57-2; ECF No. 57-3; ECF No. 57-4. The Court has reviewed the submission and awards $1,721.10 in costs.

### III.   Substitution of Party

While the damages and fees motions were pending, Ringdahl passed away. ECF No. 60 at 1. Rindgahl's widow, Qun Wang, was appointed Executrix of Ringdahl's estate, and now seeks substitution on behalf of the Estate. ECF No. 61. Afsharjavan has not opposed the substitution. ECF No. 62 at 2. The Court finds that pursuant to Federal Rule of Civil Procedure 25(a) and applicable Maryland Law, the Estate is substituted as the proper party and the claims may be pursued by Wang as Executrix.

---

[2] For each, the Court applies the maximum presumptive rate based on years of experience for each of the attorneys as follows: Charnoff ($425); Charles ($475); Chalashtori ($225); Blake ($225): Reigle ($225). For Law Clerk, Luke H. Lilienthal, the Court applies the actual billed rate of $75 per hour which is within the presumptively reasonable rate and reflected in the billing records submitted to the Court.

Rule 25(a) provides that if "a party dies and the claim is not extinguished, the court may order substitution of the proper party" if the decedent's successor or representative files a motion for substitution "within 90 days after service of a statement noting the death." Fed. R. Civ. P. 25(a). In Maryland, "[i]t is well-settled. . . that a cause of action at the time of death survives the death of a person." *Jones v. Prince George's County, Md.,* 541 F.Supp.2d 761, 764 & n. 6 (D. Md. 2008) *aff'd,* 355 F. App'x 724 (4th Cir. 2009). Further, as Executrix, Wang is vested with the power to prosecute any claim "in any appropriate jurisdiction for the protection or benefit of the estate." Md. Code Ann., Est. & Trusts § 7-401(y); *Id.* § 1-101(q). Accordingly, the motion to substitute is granted and the Clerk shall be directed to amend the case caption to reflect this substitution.


5/29/2020                                             /S/
Date                                                  Paula Xinis
                                                      United States District Judge